NO. 25-50800

IN THE UNITED STATES COURT OF

APPEALS FOR THE FIFTH CIRCUIT

---

**DANIEL VILLEGAS,**
Plaintiff-Appellee,

v.

**RAY SANCHEZ,**
Defendant-Appellant.

APPEAL
From the United States District Court for the Western District
of Texas, El Paso Division
Civil No. 19-00603 DKW-WRP

**ANSWERING BRIEF OF APPELLEE DANIEL
VILLEGAS**

<table>
<tr><td>Russell Ainsworth*<br>Quinn K. Rallins<br>LOEVY & LOEVY<br>311 N. Aberdeen Street<br>Chicago IL 60607<br>(312) 243-5900<br>*counsel of record</td><td>Felix Valenzuela<br>VALENZUELA LAW FIRM<br>701 Magoffin Avenue<br>El Paso, TX 79926<br>(915) 209-2719</td></tr>
</table>

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Daniel Villegas | Felix Valenzuela of Valenzuela Law Firm El Paso, TX |
| Daniel Villegas | Russell Ainsworth of Loevy & Loevy Chicago, IL |
| Daniel Villegas | Quinn Rallins of Loevy & Loevy Chicago, IL |

| Appellants: | Counsel for Appellants: |
|---|---|
| Ray Sanchez | James Darnell El Paso, TX |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Carlos Ortega | Andres Almanzan, Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C. |
| Yvonne Whitaker, Executor of the Estate of Alonso Marquez | James Martinez, Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C. |
| Scott Graves | James Darnell El Paso, TX |
| The City of El Paso | Lowell Denton, Denton, Navarro, Rodriguez, Bernal, Santee & Zech, P.C. |

/s/Russell Ainsworth
Attorney of record for Daniel Villegas

# STATEMENT REGARDING ORAL ARGUMENT

Under clear and controlling precedent, this Court lacks appellate jurisdiction and should dismiss the appeal. Oral argument is therefore not necessary. If the Court is inclined to assert jurisdiction and resolve any issue on the merits, counsel respectfully requests the privilege of oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF AUTHORITIES ................................................................................vi

INTRODUCTION ................................................................................................1

JURISDICTIONAL STATEMENT ......................................................................2

ISSUES PRESENTED.........................................................................................3

STATEMENT OF THE CASE.............................................................................4

    I.     Facts Underlying Villegas's Claims.........................................................6

         A.  After A Fateful Shooting, 16-Year Old Villegas Is Coerced to Falsely Confess To a Crime He Did Not Commit ................................................6

         B.  Villegas's Convictions Are Vacated........................................................9

         C.  The Department Reopens the Investigation and Defendant Sanchez Manufactures Evidence Using Gomez ....................................................9

    II.    The District Court Concluded That There Are Genuine Disputes of Material Fact Requiring Trial...............................................................12

SUMMARY OF ARGUMENT .........................................................................15

ARGUMENT .....................................................................................................16

    I.     Standard of Review .............................................................................16

    II.    This Appeal Should Be Dismissed For Lack of Jurisdiction .................17

         A.  The Jurisdictional Limits of Qualified Immunity Appeals....................17

         B.  Defendant Failed to Advance a Qualified Immunity Argument Before the District Court, and Thus Forfeits the Right to Assert Qualified Immunity On Appeal .........................................................................................18

1.   Defendant Forfeited Any Argument That The Fabricated Evidence Did Not Cause A Constitutional Violation ................... 19

2.   Defendant Forfeited Any Argument That It Was Not Clearly Established in 2014 That He Could Not Fabricate Witness Statements .................................................................................. 21

C.   Defendant Impermissibly Challenges the District Court's Factual Findings That Plaintiff Provided Sufficient Evidence, Requiring Dismissal .................................................................................... 22

D.   Defendant Impermissibly Asks This Panel To Overturn Longstanding Precedent ...................................................................................... 25

III.   Assuming Jurisdiction, Plaintiff's Claims Involve Constitutional Rights Clearly Established in 2014 .................................................................... 25

A.   Whether Law is Clearly Established Is a Question of Notice ............... 26

B.   Defendant Had Sufficient Notice in 2014 That He Could Not Fabricate A Witness's Statement .......................................................................... 27

IV.   Defendant's Request For This Panel to Overturn Fifth Circuit Precedent Is Meritless ....................................................................................... 27

CONCLUSION ............................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287 (5th Cir.2000) ........................17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................6

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ...............................................................23

*Black v. Montgomery Cnty.*, 835 F.3d 358 (3d Cir. 2016) ...............................22, 29

*Brousseau v. Haugen*, 543 U.S. 194 (2004) .............................................................27

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) ....................................................15

*Brown v. Miller*, 519 F.3d 231 (5th Cir. 2008)........................................................27

*Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497
   (5th Cir. 2012) ...............................................................5, 18, 20, 21, 22

*Clark v. Abdallah*, 131 F.4th 432 (6th Cir. 2025)....................................................29

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).......................................................16

*Cole v. Carson*, 802 F.3d (5th Cir. 2015) .............................................15, 24, 27, 28

*Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462 (5th Cir. 2014)...............5, 18

*Doe v. Taylor Indep. School Dist.*, 15 F.3d 443 (5th Cir. 1994) ............................27

*Dupree v. Younger*, 143 S.Ct. 1382 (2023) .............................................................18

*Franks v. Delaware*, 438 U.S. 154 (1978)...............................................................15

*Good v. Curtis*, 601 F.3d 393 (5th Cir. 2010)....................................................15, 27

*Guttierez v. Kermon*, 722 F.3d 1003 (7th Cir. 2013)............................................. 18

*Hope v. Pelzer*, 536 U.S. 730 (2002) .......................................................................26

*In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787 (5th Cir. 2021)......................... 25

*Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375 (5th Cir. 2008) .............................25

*Cases (Cont.)*

*Jefferson v. Ysleta Indep. School Dist.*, 817 F.2d 303 (5th Cir.1987) ....................27

*Johnson v. Jones*, 515 U.S. 304 (1995) ......................................................17, 23, 25

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) .................................................16, 18

*Massey v. Ojaniit*, 759 F.3d 343 (4th Cir. 2014) ..................................................28

*McDonough v. Smith*, 588 U.S. 109 (2019)...........................................................28

*Mooney v. Holohan*, 294 U.S. 103 (1935) .............................................................15

*N. Alamo Water Supply Corp. v. City of San Juan*, Tex.,
90 F.3d 910 (5th Cir.1996) ......................................................5, 18, 20, 21, 22

*Napue v. Illinois*, 360 U.S. 264 (1959) ...........................................................15, 27

*Naylor v. State of La., Dep't of Corr.*, 123 F.3d 855 (5th Cir. 1997) ................. 5, 18

*Norris v. Causey*, 869 F.3d 360 (5th Cir. 2017) ......................................................19

*Pyle v. Kansas*, 317 U.S. 213 (1942) ......................................................................15

*Richards v. Quarterman*, 566 F.3d 553 (5th Cir. 2009) .........................................24

*Silo Rest. Inc. v. Allied Prop. & Cas. Ins*. Co., 420 F. Supp. 3d 562, 576
(W.D. Tex. 2019)................................................................................................16

*Taylor v. Riojas*, 141 S. Ct. 52 (2020) ...................................................................26

*Trent v. Wade*, 776 F.3d 368 (5th Cir. 2015)...........................................................5

*United States v. Lanier*, 520 U.S. 259 (1997)...................................................26, 27

*United States v. Traxler*, 764 F.3d 486 (5th Cir. 2014).........................................16

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).......29

*White v. Pauly*, 580 U.S. 73 (2017) ........................................................................26

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012).......................................29

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000).......................................................29

*Cases (Cont.)*

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)..........................................................26, 27

**Statutes**

28 U.S.C. § 1291 ...............................................................................................17

**INTRODUCTION**

In this civil-rights action, Plaintiff Daniel Villegas alleges he was wrongfully prosecuted for crimes he did not commit. As the district court found, disputes of material fact are genuine and pervasive. Properly construed, the record includes sufficient evidence that would enable a reasonable jury to find Defendant detective Ray Sanchez fabricated evidence against Villegas, which was introduced against him at his criminal trial.

Defendant mounts a number of challenges, but each lacks merit. Defendant's challenge to the sufficiency of the evidence was not presented below, depriving this Court of jurisdiction to review it. Next, Defendant's request to overturn longstanding precedent establishing that a fabrication claim need not result in a conviction to be viable is doomed, because one panel of this Court does not have that power. Finally, it has long been clearly established that a police officer cannot fabricate evidence of guilt in a murder investigation, and any suggestion to the contrary is merely an attempt to delay these proceedings.

Defendant makes no serious challenge to the district court's well-reasoned opinion and, therefore, this appeal must be denied.

1

## JURISDICTIONAL STATEMENT

Defendant's jurisdictional statement is inaccurate and incomplete. The district court had jurisdiction over Villegas's claims and Defendant's notice of appeal was timely. However, as discussed below, Defendant's arguments grossly exceed this Court's limited and narrow interlocutory jurisdiction.

**ISSUES PRESENTED**

1.      Whether Defendant forfeited his right to assert qualified immunity on appeal when he failed to advance arguments for qualified immunity below such that the appeal should be dismissed.

2.      Whether Defendant's arguments contesting the factual findings made below deprive this Court of jurisdiction such that the appeal should be dismissed.

3.      Whether, assuming this Court could exercise jurisdiction over Defendant's forfeited and fact-bound arguments, Defendant had notice in 2014 that he could not fabricate material evidence.

4.      Whether, assuming this Court actually possesses jurisdiction over this appeal, this panel could (or should) reverse longstanding Fifth Circuit precedent to allow police officers to fabricate evidence so long as the resulting trial ends in an acquittal.

3

## STATEMENT OF THE CASE

Plaintiff Daniel Villegas was 16 years old when detectives coerced him to provide a false confession. This was no aberration. These detectives obtained false, inculpatory statements from three teenagers (Villegas, 15-year-old Rodney Williams, and 17-year-old Marcos Gonzalez), through violence and threats of further violence, sexual abuse, and death by execution. Eventually, the teenagers succumbed and provided false, interlocking statements that implicated themselves and two others in the murders.

Those statements were demonstrably false. Among other discrepancies, all three teenagers implicated people nicknamed "Popeye" and "Snoopy/Droopy" in the murders; but "Popeye" was incarcerated when the murder happened, and "Snoopy/Droopy" was on electronic monitoring. It is undisputed that neither person could have had anything to do with the murders.

Villegas was nevertheless convicted based on the false evidence. After Villegas mounted a post-conviction challenge to his conviction, the criminal court vacated his conviction and determined that his confession and the inculpatory statements by the other teens were inadmissible at a retrial.

When Villegas's case was remanded for a retrial in 2014, Defendant Ray Sanchez joined the case. Based on the district court's findings at summary judgment, Sanchez fabricated a false, inculpatory statement from Plaintiff's childhood friend,

4

Oscar Gomez, through threats and coercion. That evidence was used to further the prosecution against Villegas in the absence of his confession and the other inculpatory statements.

At his retrial, Villegas was finally acquitted of all charges, clearing the way for his civil suit to proceed. Defendant moved for summary judgment on Villegas's fabrication claim, and the lower court, viewing the record in the light most favorable to Villegas, denied it.

At this appeal stage, Defendant mounts new challenges to whether the fabricated evidence caused a constitutional violation and whether the rights at issue here were clearly established in 2014, neither of which were presented below.

Under well-settled law, arguments not raised in district court are forfeited and will not be considered absent "extraordinary circumstances." *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 (5th Cir. 2012); *N. Alamo Water Supply Corp. v. City of San Juan*, Tex., 90 F.3d 910, 916 (5th Cir.1996). "Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *Id*.

Further, the findings made by the district court must be accepted as true and cannot be contested at this juncture. *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015); *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468 (5th Cir. 2014); *Naylor v. State of La., Dep't of Corr.*, 123 F.3d 855, 857 (5th Cir. 1997). The trial

court's findings that disputes are "genuine" indicate "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, Defendant's challenges to the factual record as determined by the district court must be rejected.

## I.      Facts Underlying Villegas's Claims

### A.      After A Fateful Shooting, 16-Year Old Villegas Is Coerced to Falsely Confess To a Crime He Did Not Commit

On the evening of April 10, 1993, two teenaged boys, Armando Lazo and Robert England, were walking with friends on Electric Street in El Paso, Texas when gunshots were fired at them. (ROA.17513). Lazo and England were killed; two witnesses escaped unharmed. (ROA.17513).

Villegas had nothing to do with the murders. At the time, he was with friends at an apartment complex far from the shooting. (ROA.12424)

Over the course of the next few weeks, several juveniles claimed responsibility for the murders. (ROA.17552, 17554). Additionally, one teenager, Rudy Flores, admitted to being at the scene of the murder at the time of the crime, provided a false alibi, and had threatened to shoot and kill the victim Lazo shortly before the crime. (ROA.17552-17554).

Although no witnesses, victims, or suspects had implicated Villegas, detectives set their sights on interrogating Villegas's 17-year-old cousin, David

Rangel, instead of pursuing Flores. (ROA.17516). Detectives interrogated Rangel and threatened him with rape and life in prison. (ROA.17516). In response, Rangel told detectives what he knew about the murders: that 16-year-old Villegas had jokingly told him that he committed the murders with a shotgun. (ROA.17516). The statement, made in jest, was demonstrably false because the murders had been committed with a .22 caliber gun. (ROA.17513). Nevertheless, a detective made Rangel sign a false statement that Villegas did not know the caliber of the weapon used and omitting that it was a joke. (ROA.17531).

Detectives then picked up and interrogated 15-year-old Rodney Williams. (ROA.17517). Analogous to Rangel, the district court noted it is "unclear how" Williams was identified or "why Williams was interrogated." (ROA.17516, 17517). At any rate, detectives threatened Williams with rape in prison, and coerced him to sign a false confession to the murders. (ROA.17518). Williams's confession inexplicably also implicated Ramirez ("Popeye") and Lujan ("Droopy") in the murders, despite their documented innocence. (ROA.17518).

Detectives then proceeded to arrest 17-year-old Marcos Gonzalez and Villegas. (ROA.17518). During Gonzalez's interrogation, a detective pushed Gonzalez against a wall and banged his head against the wall multiple times. (ROA.17518). Gonzalez was threatened with physical violence, and told that he would be charged with capital murder, be raped in prison, and ultimately be killed

7

by lethal injection. (ROA.17518). A detective then forced Gonzalez to provide a statement implicating himself, Villegas, Williams, and others in the Electric Street shooting. (ROA.17518).

Multiple detectives interrogated Villegas. (ROA.17518-21). One detective hit Villegas in the back of the head repeatedly, threatened him that he would be raped by "fat faggots" in jail, threatened to take him to the desert and beat him, and threatened that Villegas would be placed in the electric chair and would flip the switch himself. (ROA.17520). He promised Villegas that if he confessed, he would not go to jail, but if he didn't, the detective would "kick his ass." (ROA.17519). The detective fed information to Villegas about the murders, who then agreed to confess as a result of the threats and violence used against him. (ROA.17522).

The false confessions detectives coerced from Villegas, Gonzalez, and Williams were interlocking and all claimed that they committed the crimes with two others, nicknamed Popeye and Droopy. (ROA.14888). The statements were demonstrably false because at the time of the murder, Popeye was incarcerated and Droopy was on electronic monitoring, and thus neither one could have had anything to do with the murders. (ROA.14889).

Without any physical evidence to tie Villegas to the murders, prosecutors had to rely on his coerced false confession and the fabricated statements coerced by detectives and attributed to Rangel, Williams and Gonzalez. (ROA.13181-13185).

Villegas's first murder trial ended in a hung jury. (ROA.17521). The state retried Villegas and he was convicted at his second trial. (ROA.17521). On August 24, 1995, Villegas was sentenced to life in prison. (ROA.73).

### B.     Villegas's Convictions Are Vacated

In 2009, following an evidentiary hearing, the criminal court "strongly recommend[ed]" that Villegas's convictions be vacated. (ROA.1303 ¶127). The court found that Villegas, Williams, and Gonzalez were subjected to "illegal and coercive methods" and that their confessions were "completely unreliable." *Id*. The court concluded that "the new evidence presented at the writ hearing adequately meets the standard to demonstrate Villegas' actual innocence." *Id.* In 2013, after spending nearly two decades in prison, the Texas Court of Criminal Appeals overturned Villegas's convictions. (ROA.17522) (ROA.1303 ¶128).

### C.     The Department Reopens the Investigation and Defendant Sanchez Manufactures Evidence Using Gomez

The State decided to retry Villegas and the El Paso Police Department assigned detective Sanchez to the case. (ROA.17522). Sanchez received information from Jennifer Gomez that Villegas had supposedly confessed to his childhood friend Oscar Gomez that he murdered Lazo and England. (ROA.17522).

On December 4, 2014, Gomez was picked up on a traffic warrant, but taken to the Crimes Against Persons office by Sanchez for interrogation.  (ROA.12571,

12571). According to another detective, Sanchez "needed" to get a statement from Gomez. (ROA.9675:18-19). Once Gomez arrived at the office, he was told that "the conversation with Daniel Villegas needed to be addressed" because "Villegas admitted to him" that Villegas committed the murders. (ROA.12570).

The district court found that Sanchez proceeded to interrogate Gomez for two hours about the Electric Street shootings, while Gomez remained in handcuffs. (ROA.12571). During the interrogation, which was unrecorded, Gomez told Sanchez that he did not remember whether Villegas ever made any such confession to him. (ROA.12571). But Sanchez responded by saying "no, no, no" and that he would make Gomez remember. (ROA.12571).

Gomez explained to Sanchez that, prior to Villegas's conviction, he visited Villegas and asked him if he committed the murders. (ROA.12571). Gomez explained that Villegas "was always joking around" and shook his head and grinned at Gomez's question. (ROA.12571). Gomez explained to Sanchez that Villegas was a "jokester" and believed that he was only joking. (ROA.12571). But Sanchez told Gomez that "he didn't want to hear that" and that Gomez needed to "save [his] own ass." (ROA.12571).

After the two-hour interrogation, Sanchez instructed Gomez not to mention that Villegas was joking when he made a statement about the murders; (ii) Sanchez instructed him not to say Villegas had not confessed to the murders (iii) Sanchez told

10

him not to share his opinion that Villegas did not commit the murders; and (iv) Gomez felt that if he did not comply with Sanchez's demands, he would be sent to prison. (ROA.12571).

Sanchez then recorded Gomez's statement. (ROA.12570). During the recorded conversation, Sanchez asked Gomez questions to disguise the fact that he had already interrogated Gomez. (ROA.12571). For example, Sanchez asked Gomez whether he knew "which Daniel Villegas" they were about to question him about (ROA.12571), although Sanchez's police report reveals Gomez had already been told by detectives they wanted to talk him about his conversation with Villegas regarding the 1993 crime (ROA.12570). Although Sanchez denied having any unrecorded conversation with Gomez about Villegas, during the recording Sanchez stated "[w]hen we were talking earlier," referencing the unrecorded interrogation that was not supposed to have taken place. (ROA.12140).

Ultimately, Sanchez coerced a false statement from Gomez, in which he claimed that Villegas admitted to committing the shootings, and omitted that Villegas was joking. (ROA.12570).

After the interrogation, Sanchez told Gomez "not to discuss the interrogation with anyone," including Villegas's defense attorneys. (ROA.12571).

At Plaintiff's third criminal trial, Gomez's testimony was crucial because the criminal court had already found that the confessions from the three teenagers

11

(Villegas, Williams, and Gonzalez) that were used to implicate Villegas at the previous trials were inadmissible. (ROA.1303 ¶127).

The state called Gomez to testify about the newly manufactured recorded statement by Sanchez and the recording was played for the jury. (ROA.12136:24–12137:12) Despite the fabricated evidence implicating Villegas, the jury found him not guilty. (ROA.1308 ).

## II.　The District Court Concluded That There Are Genuine Disputes of Material Fact Requiring Trial

Villegas filed this action in 2015. Sanchez repeatedly sought dismissal of this suit, including attacking the second and the third amended complaints. (ROA.976-87, 1454-71).

In denying Defendant's Rule 12(b)(6) motions, the lower court held it was clearly established that officers who knowingly use false evidence violate the constitution. (ROA.1763-64). The district court found that Defendant's argument that his actions were constitutional was "unpersuasive" and the officers were "not protected by qualified immunity." (ROA.1763-64)

Nevertheless, Defendant Sanchez sought summary judgment. (ROA.8618, et. seq.). Defendant's Rule 56 motion, however, did not argue that Villegas's constitutional rights at issue were not clearly established. *Id*. In a detailed and extensive opinion recounting the evidence in the case, the district court denied the motion, even electing to explain why it "was clearly established," an argument

Defendant had forfeited. (ROA.17548).

Summarizing its extensive findings, the district court noted that genuine factual disputes exist as to whether Sanchez manufactured false evidence. In support of this determination, the district court set out in rich detail its findings about the sufficient evidence establishing that Sanchez fabricated Gomez's statement by instructing him to (i) not mention that Villegas was joking when he made a statement about the murders; (ii) not say Villegas never confessed to the murders (iii) not share his opinion that Villegas did not commit the murders. (ROA.12571, 17545). The court also noted that Defendant asked questions that were already evident from the previous recorded interview in order "to create the appearance that no unrecorded interview had taken place." (ROA.17545). The court determined that Sanchez acted this way in an "effort to hide that Gomez had been coached." (ROA.17547-17548).

Turning to whether Villegas provided sufficient evidence that Sanchez "knew" the manufactured evidence was false, the district court determined that, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Sanchez "knew" Gomez's statements during the recorded portion conflicted with Gomez's statements before Sanchez hit the record button. (ROA.17546). The court found that "Gomez's affidavit supports Plaintiff's position" that Sanchez knew the information in Gomez's recorded statements was false. (ROA.17547-48).

13

The district court also credited evidence that Sanchez made Gomez exclude that Villegas was joking when he mentioned the murders (ROA.17547), a distinction that was also omitted from Rangel's statement (ROA.17516-17517,17532). Importantly, Gomez explained that Villegas did not provide him with a single detail to support committing the murders. (ROA.17523).

As to causation, in addition to noting that Defendant "does not cite any evidence" to rebut Villegas's arguments for causation, the district court recognized that Villegas established that the fabricated evidence "contributed to his deprivation of liberty." (ROA.17547) The district court reasoned it unlikely that Villegas would have been charged with a crime, and thus deprived of his liberty, if the only evidence against Villegas was Gomez's unrecorded interrogation where he explained to Sanchez that he believed Villegas was joking about the murders.[1] (ROA.17547). But, as Gomez states, Sanchez told him not to mention that Villegas was joking when he gave Sanchez the recorded statement. (ROA.12571).

---

[1] Sanchez does not dispute there was no physical evidence implicating Plaintiff in the murders. (ROA.14890). Nor does Sanchez dispute that, at Plaintiff's second trial, "the only inculpatory evidence used to convict Villegas came from the fabricated statements attributed to Plaintiff, Williams, and Gonzalez, and testimony from Rangel that Villegas jokingly implicated himself in the murders." (ROA.14890).

**SUMMARY OF ARGUMENT**

This appeal should be dismissed for lack of jurisdiction. This Court is limited to reviewing whether Defendant is entitled to qualified immunity, but Sanchez failed to preserve that issue for review by not raising it before the district court. Defendant has, therefore, forfeited the argument. Instead, completely new arguments and factual challenges cornerstone Defendant's appeal. As a result, Defendant has not invoked this Court's jurisdiction even as to whether, on Plaintiff's facts, the fabricated evidence caused a constitutional violation and whether the rights at issue here were clearly established in 2014.

Assuming for the sake of argument this Court were to address whether, with the facts properly construed, the constitutional rights at issue in this case were obviously clearly established long before 2014. Plaintiff's claim involves a core constitutional right that had been clearly established for decades. Officers may not materially misrepresent or fabricate information claiming probable cause exists. *Franks v. Delaware*, 438 U.S. 154, 165 (1978); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *Cole v. Carson*, 802 F.3d 752, 768 (5th Cir. 2015) (citing *Good v. Curtis*, 601 F.3d 393, 398-99 (5th Cir. 2010)). Police cannot fabricate evidence in criminal cases. *Napue v. Illinois*, 360 U.S. 264 (1959); *Pyle v. Kansas*, 317 U.S. 213, 216 (1942); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935); *Brown*, 623 F.3d at 253.

The remaining issue Defendant raises—e.g., asking this Court to overturn this

Circuit's longstanding precedent that a fabrication claim does not require a conviction—could not even theoretically be advanced in this posture. *Silo Rest. Inc. v. Allied Prop. & Cas. Ins*. Co., 420 F. Supp. 3d 562, 576 (W.D. Tex. 2019) ("in the absence of 'an intervening change in the law,' such as by a statutory amendment, or the Supreme Court, or [the Fifth Circuit sitting] en banc," the earlier circuit precedent applies) (quoting *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014)

Defendant's arguments are baseless. Dismissal or summary affirmance is appropriate to avoid further burdens on the judicial system and prejudice to Villegas. *Cf. Coinbase, Inc. v. Bielski*, 599 U.S. 736, 745 (2023) (explaining "the courts of appeals possess robust tools to prevent unwarranted delay and deter frivolous interlocutory appeals" including accepting requests to "summarily affirm . . . or to dismiss the interlocutory appeal as frivolous").

## ARGUMENT

### I.    Standard of Review

Ordinarily, this Court reviews the district court's denial of summary judgment *de novo*, applying the same standard as the district court. *Kinney v. Weaver*, 367 F.3d 337, 347-348 (5th Cir. 2004). But, this Court's assessment of its jurisdiction in an interlocutory appeal asserting qualified immunity "differs from the standard employed in most appeals" of summary judgment rulings because it lacks the power to review the district court's decision that a genuine factual dispute exists. *Id*. at 347.

16

Therefore, this Court does not apply the standard of Rule 56, but instead considers only whether the district court erred in assessing the legal significance of the conduct that it deemed sufficiently supported for purposes of summary judgment. *Id.* As explained below, this Court's review of facts is strictly limited and it may not reassess or weigh questions of evidence, and a district court's determination that the parties' evidence presents genuine issues of material fact is unreviewable. *Johnson v. Jones*, 515 U.S. 304, 311 (1995).

## II.  This Appeal Should Be Dismissed For Lack of Jurisdiction

Defendant bears the burden of establishing that this Court has jurisdiction over their contentions. *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 289 (5th Cir. 2000).

### A.     The Jurisdictional Limits of Qualified Immunity Appeals

Federal courts of appeals generally only have jurisdiction to review "final decisions" of the district courts. 28 U.S.C. § 1291. Under the collateral order doctrine, a non-final decision of the district court can be immediately appealable in limited circumstances. The decision must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) once made, be effectively unreviewable on appeal from the final judgment. *Johnson*, 515 U.S. at 310.

As the Supreme Court reminds us, an order denying qualified immunity is

17

only "sometimes immediately appealable." *Dupree v. Younger*, 143 S.Ct. 1382, 1388 n.3 (2023); *see also Naylor v. State of La., Dep't of Corr.*, 123 F.3d 855, 857 (5th Cir. 1997) ("such orders are not immediately appealable if they are based on sufficiency of the evidence"). Review is proper if, and only if, the Court is reviewing "whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on a given set of facts." *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468 (5th Cir. 2014) (quoting *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (*en banc*)). Consequently, this Court may determine whether this "case fits squarely within that class of unappealable, fact-based qualified immunity orders," as it has before. *Naylor*, 123 F.3d at 857; *see also Guttierez v. Kermon*, 722 F.3d 1003, 1010 (7th Cir. 2013) (an officer "challenging a district court's denial of qualified immunity effectively pleads himself out of court by interposing disputed factual issues in his argument.").

> **B.    Defendant Failed to Advance a Qualified Immunity Argument Before the District Court, and Thus Forfeits the Right to Assert Qualified Immunity On Appeal**

It is axiomatic that in order to pursue an argument on appeal, the appellant must first present the argument to the district court. *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 (5th Cir. 2012); *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir. 1996). Failure to present the argument to the district court deprives the appellant of the right to complain the lower court got it

wrong. Indeed, how can Sanchez complain the district court erred when the district court never had the opportunity to consider Sanchez's argument?

Sanchez contends that the district court erred in denying his request for qualified immunity. But the sum total of Sanchez's request for qualified immunity below appears in the following sentence: "Without establishing a constitutional violation the Detectives are protected by qualified immunity." (ROA.9633).

Sanchez provided no argument, cogent or otherwise, about why he was entitled to qualified immunity. He did not cite any case law to the district court in support of his quest for qualified immunity. *Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017) (noting that a party forfeits an argument by failing to brief it).

**1. Defendant Forfeited Any Argument That The Fabricated Evidence Did Not Cause A Constitutional Violation**

Below, Sanchez placed all of his eggs in the basket that Plaintiff had *no evidence* whatsoever to prove that Sanchez fabricated evidence. *See, e.g.* (ROA.9625-26) ("Plaintiff has failed to provide evidence that his due process rights under the Fourteenth Amendment were violated."); (ROA.9627) ("nor is there any evidence of any fabrication of false evidence that would be used against Villegas); (ROA.9633) ("Plaintiff has failed to produce any evidence that Det. Sanchez and Det. Loya conspired to fabricate false evidence."); (ROA.9634) ("Without any evidence of a fabricated statement the Plaintiff cannot establish a violation of his Fourth Amendment rights as alleged in Count IV."). Sanchez doubled down in his

19

reply brief, basing his Rule 56 motion on one singular argument: that he did not fabricate evidence. *See, e.g.*, (ROA.14849-50) ("Plaintiff failed to produce sufficient evidence to overcome Defendant Officers's [sic] invocation of qualified immunity that Defendant Officers conspired to fabricate false evidence").

On appeal, Sanchez now attempts to advance a new argument - that even if Sanchez fabricated evidence, that evidence did not cause a constitutional violation. Sanchez Br. App. at 8-10. The problem for Sanchez is that this argument was never presented to the district court. Thus, Plaintiff had no opportunity to rebut the argument, and the district court could not have considered it. Arguments raised by an appellant in this Court for the first time are deemed forfeited. *Chevron USA, Inc.*, 689 F.3d at 503; *N. Alamo Water Supply Corp.*, 90 F.3d at 916 (waiver by failing to raise argument below). Further, Defendant never contested the fact that Gomez testified at Villegas's third criminal trial and his fabricated statement was played for the jury. (ROA.9624-9633, 14848-14850). If he had, of course, Plaintiff would have had the opportunity to contest it with evidence of Gomez's open court testimony. (ROA.12136:24–12137:12). But in any event, it is uncontested that Gomez's fabricated statement was used against Plaintiff, as found by the district court. (ROA.17547)

Defendant also argues that the district court confused the fabricated statement he took from Gomez in 2014, with the 1993 fabricated statement taken from Rangel,

which Plaintiff alleges was fabricated because Rangel too told detectives that "Villegas jokingly implicated himself in the murders." Sanchez Br. App. at 8. This argument is forfeited also because Defendant did not address it in his motion for summary judgment, (ROA.9624-9633), or in his reply brief. (ROA.14846-54); *see Chevron USA, Inc.*, 689 F.3d at 503 (forfeiture by failing to raise argument below).[2]

Simply put, none of these arguments were raised in the lower court, and thus were forfeited. *N. Alamo Water Supply Corp.*, 90 F.3d at 916.

### 2. Defendant Forfeited Any Argument That It Was Not Clearly Established in 2014 That He Could Not Fabricate Witness Statements

Tellingly, Defendant provided no coherent argument at summary judgment that the constitutional right at issue in this case was not clearly established. (ROA.9624-9633). For good reason: a claim that Sanchez did not know he was prohibited from fabricating evidence is absurd. Defendant now argues, without any legal authority, that because the jury "heard testimony from [Gomez] that he was coerced," this case is different and the clearly established law is applicable. Sanchez Br. App. at 16.

---

[2] Forfeiture aside, the argument still fails. The district court specifically separated the 1993 investigation and prosecution involving Rangel's fabricated statement, (ROA.17513-17522), from the 2014 investigation and subsequent prosecution involving Gomez's fabricated statement, (ROA.17522-17523). The court provided separate findings about each constitutional violation: one fabricated statement caused by Defendant Marquez in 1993, (ROA.17532), the other caused by Defendant Sanchez in 2014, (ROA. 17545-17548). That Sanchez used a similar playbook as Marquez two decades later – omitting the witness's initial statement that Plaintiff was joking – does not equate to confusion; it supports the district court's finding that Sanchez too would have only had a statement that Villegas jokingly confessed the murders. (ROA.17547, 12571)

21

For starters, Defendant never raised this argument below. *N. Alamo Water Supply Corp.*, 90 F.3d at 916  (failing to raise argument below results in forfeiture). Second, it is nonsensical. The fact that the jury heard testimony from Gomez that Sanchez coerced him does not absolve Sanchez of liability. The fabricated statement was still admitted at Plaintiff's criminal trial for murder. Sanchez was on notice that police officers could not fabricate witness statements. As the district court put it: "[i[t belies common sense to think that an officer cannot fabricate a witness statement, but can fabricate some other type of evidence against a suspect." (ROA.17535 n.5). It is absurd to think that an officer could avoid liability simply because his or her malfeasance was exposed at trial. *See, e.g .Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016) ("such a result would insulate the ineffective fabricator of evidence while holding accountable only the skillful fabricator.").

Ultimately, Defendant never presented these arguments to the court below. This prevented the lower court from considering the issue. Defendant has forfeited the right to assert them at this late stage. *Chevron USA, Inc.*, 689 F.3d at 503.

**C.    Defendant Impermissibly Challenges the District Court's Factual Findings That Plaintiff Provided Sufficient Evidence, Requiring Dismissal**

Some—and in fact many—interlocutory appeals following the denial of qualified immunity properly invoke appellate jurisdiction, where Defendant first accepts the Plaintiff's facts and those found by the district court and then asks

22

whether the rights at issue were clearly established. This is not such an appeal.  A

defendant may not appeal a summary judgment order denying  qualified immunity

where, as here, that order "determine[d] only a  question of 'evidence sufficiency,'

i.e., which facts a party may, or may  not, be able to prove at trial. This kind of order

… is not appealable." *Johnson*, 515 U.S. at 313. A district court's determination that

there exists a triable issue of fact cannot be appealed on an interlocutory basis, even

when the finding arises in the context of an assertion of qualified immunity. *Id*.;

*Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). The Court need look no further than

Defendant's opening brief and the district court's opinion to determine that Sanchez

is challenging the court's factual findings, over which this Court has no jurisdiction.

The district court found sufficient evidence enabling a jury to conclude that

Sanchez (1) fabricated evidence; (2) knew the evidence was false; and (3) Plaintiff's

deprivation of liberty resulted from the fabricated evidence. (ROA.17545-175458).

The district court found that Plaintiff's version of events was supported by Gomez,

who not only provided an affidavit after he was interrogated by Sanchez, but testified

at Plaintiff's third criminal trial. (ROA.17545, 17547, 12136:24–12137:12).

On appeal, Defendant argues that Plaintiff did not show "any evidentiary

support" that Defendant caused Plaintiff's deprivation of liberty. Sanchez Br. App.

at 6-10. But the district court disagreed, concluding that Defendant's participation

"contributed to [Plaintiff's] deprivation of liberty." (ROA.17547). The court credited

23

Plaintiff's view that, absent the manufactured evidence, the prosecutor would have had to rely on Gomez's actual unrecorded statement that Villegas was joking when he responded to his question about the murders. (ROA. 17547).   Further, the court found that Defendant "[did] not cite any evidence" to rebut Plaintiff's arguments for deprivation of liberty. (ROA.17547). *See Richards v. Quarterman*, 566 F.3d 553, 562 n.2 (5th Cir. 2009) (failure to develop argument constitutes forfeiture of claim).

Not only did the district court find sufficient evidence, but this is what the record—viewed in the light most favorable to Plaintiff—shows. Plaintiff provides evidence that he brought Gomez to the police station and interrogated him about the murders off the record for two hours, while Gomez remained in handcuffs. (ROA.12571). During the unrecorded interview, Gomez told Sanchez that he did not remember whether Sanchez ever made any such confession to him. (ROA.12571). But Sanchez responded by saying "no, no, no" and that he would make Gomez remember. (ROA.12571).

Thereafter, Plaintiff was subjected to a third criminal trial where his core right to due process was implicated. *Cole*, 802 F.3d at 771 ("a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person"). At the trial, despite the manufactured evidence, Gomez testified to the truth about his interrogation. (ROA.12136:24–12137:12).

Despite all of these findings—which are categorically unreviewable here,

24

*Johnson*, 515 U.S. at 310—the core premise of Defendant's brief is that Plaintiff's account should be viewed as not providing "any evidentiary support", Sanchez Br. App. at 8, which would require the Court to reject the lower court's finding and view the evidence in the light most favorable to Defendant. These arguments that contest the lower court's factual findings deprive this Court of jurisdiction such that the appeal should be dismissed.

###    D.    Defendant Impermissibly Asks This Panel To Overturn Longstanding Precedent

On appeal, Defendant asks this panel to overturn this Circuit's longstanding precedent that a fabrication claim does not require a conviction. Sanchez Br. App. at 10-14. But is well-settled in this Circuit "that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (quoting *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)). This rule is strict and rigidly applied. *Id.* Defendant has not argued that these exceptions apply, which dooms his request.

### III.    Assuming Jurisdiction, Plaintiff's Claims Involve Constitutional Rights Clearly Established in 2014.

Assuming *arguendo* the Court could consider the issue, there cannot be any serious contention Villegas's claims involve constitutional rights clearly established in 2014 (and long before). No reasonable officer would believe it permissible to

fabricate witness statements through false or misleading information in 2014. Nor, can there be any reasonable dispute that Defendant—a sworn police officer—had sufficient notice that fabricating evidence of guilt in a murder investigation would violate the Constitution.

### A.   Whether Law is Clearly Established Is a Question of Notice

Qualified immunity generally "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78-79 (2017) (internal quotation marks and citation omitted). At its core, the focus of the doctrine is notice and the "salient question … is whether the state of the law" at the time of the conduct provided "fair warning" the acts were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Fair warning in mind, there is no requirement of an exact case on point. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866-67 (2017) ("It is not necessary, of course, that 'the very action in question has previously been held unlawful.' That is, an officer might lose qualified immunity even if there is no reported case 'directly on point.'") (citations omitted), and courts err when, despite clear violations, they demand factual identical cases. *E.g. Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020).

Officers "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741 (citing *United States v.*

26

*Lanier*, 520 U.S. 259 (1997). This Court has held the term "clearly established" does not necessarily refer to commanding precedent that is factually on all-fours with the case at bar or that holds that the very action in question is unlawful. S*ee Jefferson v. Ysleta Indep. School Dist.*, 817 F.2d 303, 305 (5th Cir.1987). Immunity is therefore unavailable in the "obvious case," *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam), or where the application of pre-existing law is "apparent." *Ziglar*, 137 S. Ct. at 1866; s*ee also Doe v. Taylor Indep. School Dist.*, 15 F.3d 443, 455 (5th Cir. 1994) (*en banc*) (finding the constitutional right is clearly established if the unlawfulness of the conduct would be apparent to a reasonably competent official).

### B. Defendant Had Sufficient Notice in 2014 That He Could Not Fabricate A Witness's Statement

As the district court correctly determined, the right of criminal defendants to be free from fabricated evidence was well-established decades before 2014. (ROA.17534-17535); *see Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) ("the right of criminal defendants to be free from false or fabricated evidence was well settled by 1959 or earlier"), citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Cole v. Carson*, 802 F.3d 752, 768 (5th Cir. 2015) (citing *Good v. Curtis*, 601 F.3d 393, 398-99 (5th Cir. 2010)).

### IV. Defendant's Request For This Panel to Overturn Fifth Circuit Precedent Is Meritless

Because the law was clearly established that police officers could not fabricate

27

evidence, he makes a doomed argument, asking this panel to overturn this Circuit's longstanding precedent that a fabrication claim does not require a conviction. Sanchez Br. App. at 10-14.

At summary judgment, Defendant disagreed with this Circuit's law too, relying on an out-of-circuit case to argue that Plaintiff's fabrication claim could not proceed because there was no "conviction and subsequent incarceration." (ROA.9625), citing *Massey v. Ojaniit*, 759 F.3d 343 (4th Cir. 2014). The district court properly rejected this argument, reminding Defendant that a conviction is not required to bring a fabrication claim. (ROA.17529) (citing *Cole*, 802 F.3d at 771–73 and *McDonough v. Smith*, 588 U.S. 109, 117 n.4 (2019).

On appeal, Defendant attempts to distinguish himself from *Cole*, arguing that he was not involved in Villegas's "initial trial." Sanchez Br. App. at 12. Once again, Sanchez misses the mark. The due process clause exists to ensure a fair trial, regardless whether it is the first, second, or third trial, and regardless of the outcome. A police officer may not fabricate evidence that is used to prosecute an innocent man. *Cole*, 802 F.3d at 771–73.

In *Cole,* this Circuit affirmed "a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." 802 F.3d at 771. The Court noted that deliberate framing by officials "offends the most strongly held values of our nation." *Id*. at 772. Accordingly, the

court determined that "even when a trial functions properly to vindicate a person's innocence," fabrication of evidence deprives a person of his or her due process rights. *Id*. at 767. The Court "held that a victim of intentional fabrication of evidence by officials is denied due process when he is either convicted or acquitted." *Id*. at 768; *see also id*. ("[A] conviction [is] a requirement we have not insisted upon.").

Other Circuits have permitted plaintiffs to pursue due process claims predicated on the fabrication of evidence notwithstanding the fact, as here, that the plaintiff was not convicted of criminal charges. *Black* , 835 F.3d at 371; *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000); *Clark v. Abdallah*, 131 F.4th 432, 451 (6th Cir. 2025); *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012).

The harm – corruption of due process – occurs whether or not one is convicted.   Overturning this Circuit's precedent would not only contravene the purposes of Section 1983, but "insulate the ineffective fabricator of evidence while holding accountable only the skillful fabricator." *Black*, 835 F.3d at 370 (3d Cir. 2016). There is no meaningful reason (and Sanchez does not attempt to provide one) why due process protections precluding fabricated evidence should turn on whether or not one is convicted at trial.

29

## CONCLUSION

For the foregoing reasons, this appeal should be dismissed, and this cause should be returned to the district court for a trial on the merits.

Dated this 8th day of April, 2026.

Respectfully submitted,

/s/Russell Ainsworth

Russell Ainsworth*               Felix Valenzuela
Quinn K. Rallins                 VALENZUELA LAW FIRM
LOEVY & LOEVY                    701 Magoffin Avenue
311 N. Aberdeen Street           El Paso, TX 79926
Chicago IL 60607                 (915) 209-2719
(312) 243-5900
*counsel of record

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2026, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

/s/Russell Ainsworth
*Attorney for Daniel Villegas*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P *32(a)(7)(B)* because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 6,406 words. In preparing this certificate, I relied on the word-count tool of Microsoft Word.

/s/Russell Ainsworth
*Attorney for Daniel Villegas*